IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BONNIE KRAMER, ) | CASE NO.: 1:07 CV 3164 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE DONALD C. NUGENT |
| ) | |
| MIDAMCO, ) | |
| ) | MEMORANDUM OPINION |
| Defendant. ) | AND ORDER |
| ) | |

This matter is before the Court on Defendant's Motion for Summary Judgment (ECF #86). Plaintiff, Bonnie Kramer, filed a Memorandum in Opposition to Defendant's Motion (ECF #103), and Defendant, Midamco, Inc., ("Midamco") filed a reply in support of its motion. (ECF #106). After careful consideration of the briefs and a review of all relevant authority, Defendant's Motion for Summary Judgment is GRANTED.

**FACTS AND PROCEDURAL HISTORY[1]**

---

[1] In accordance with the applicable standards on a motion for summary judgment, genuine

The Complaint, filed on October 15, 2007, alleges that Bonnie Kramer, a member of the non-profit corporation, Disabled Patriots of America, Inc., is disabled as defined by the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and uses a wheelchair for mobility purposes. Ms. Kramer is a "tester" who personally visits public accommodations and seeks out barriers that she believes violate the ADA. If such barriers are found, Ms. Kramer initiates legal proceedings. (Complaint ¶¶ 2 - 4). The Complaint states that Ms. Kramer, in her "individual capacity" and as a "tester," visited a Facility owned by the Defendant and, due to her disability, encountered barriers to access that denied or limited her access to, and use and enjoyment of, the goods, services, facilities, privileges, advantages, and/or accommodations offered at the Facility. (Complaint ¶¶ 2, 4).

In this case, Ms. Kramer claimed that she attempted to access the facility known as Solon Square Shopping Center, located at 33605 Aurora Road, Solon, Ohio ("the Facility"), but that she was unable to do so because there were barriers to access, dangerous conditions, and other alleged ADA violations that precluded or limited her access to the facilities and/or to the goods and services offered therein. (Complaint ¶13). The Complaint contains a more detailed list of alleged violations relating to the parking, entrances, paths of travel, counter heights, seating, signage, and restrooms, (Complaint ¶ 16); but, it does not specify when Ms. Kramer encountered the alleged violations, what individual stores had which alleged barriers, or where in the common areas alleged violations were encountered.

Midamco filed an Answer, denying for lack of information all of the substantive claims of

---

questions of material fact have been resolved in favor of the non-moving party, in this case, the Plaintiff.

ADA non-compliance, and asserting several defenses to the action, including lack of standing. (ECF #8). Midamco later filed a Motion to Dismiss for lack of standing (ECF #13). This motion challenged the associational standing of Disabled Patriots of America, as well as the personal standing of Bonnie Kramer. The Court denied the Motion finding that Bonnie Kramer had made general allegations sufficient to support standing at that stage of the litigation, but emphasized that "[i]f through the course of discovery, Ms. Kramer is not able to provide specific facts that would show that she does, in fact, have standing to pursue the alleged claims, a defense motion for summary judgment will merit very serious consideration." ( ECF #25). Disabled Patriots' standing was limited to those claims directly affecting Ms. Kramer because there were no allegations that any other member of the organization had or would suffer injury as a result of the alleged ADA violations at the Facility. (ECF #25).

Extensive battles were waged throughout the course of discovery over the existence and relevance of information relating the structure, membership, and financial records of Disabled Patriots of America, Inc.. These culminated with a Motion to Compel Financial Records filed by Midamco, and a request by Disabled Patriots for voluntary dismissal from the action. (ECF #60, 62). The Court granted the dismissal with prejudice, rendering the Motion to Compel moot, and leaving Bonnie Kramer as the sole Plaintiff in this action. (ECF #77). Additional discovery disputes centered around the Rule 34 inspection of the Facility, payment of costs and fees for expert depositions, information pinpointing the location of alleged violations, and production (or lack thereof) of a variety of records and communications.

Bonnie Kramer was deposed on October 26, 2008. During that deposition, she testified that she visited the Quiznos at Solon Square on or about July 21, 2007, and that she had been to

-3-

the Quiznos at that particular shopping Center two or three times before in 2006. (Kramer Depo. at 58-59). She testified that she encountered no barriers at Quiznos. (Kramer Depo. at 67). Ms. Kramer testified that she could not remember any other stores or restaurants she may have looked at prior to July 21, 2007, and she offered no testimony of any barriers to access at any time prior to that date. (Kramer Depo. at 60).

She very clearly stated in her deposition that she visited the Facility on July 21, 2007 specifically to visit the Stein Mart store, (Kramer Depo. at 61); that she took the RTA Paratransit bus service to get there (Kramer Depo. at 61-64); that she went alone (Kramer Depo. at 61); and, that she had wanted to eat at a Chinese restaurant there. (Kramer Depo. at 62). She testified that during that visit she went into a paper store and looked around, (Kramer Depo. at 64-65), and that she may have "popped [her] head into the Office Max to see what it looked like." (Kramer Depo. at 65).

Ms. Kramer testified that she encountered a barrier at Stein Mart because the aisles were impassable due to an overabundance of merchandise, (Kramer Depo. at 66); that she did not ever attempt to use the bathrooms at Stein Mart, (Kramer Depo. at 88); and, that she did not remember any barriers related to ingress or egress from the store. (Kramer Depo. at 66-67). She testified that she encountered no barriers at Office Max, (Kramer Depo. at 68), and none at the paper store.[2] (Kramer Depo. at 67). She did testify that she encountered a barrier at the Chinese restaurant on the July 21, 2007 visit because "there were stairs going up and [she] couldn't

---

[2] Ms. Kramer did testify that she noticed the counters were not the right height. Noticing that the counters were not the right height does not equate to suffering injury from a barrier at this location. Ms. Kramer testified that she was only browsing in this store and did not attempt to purchase anything. Further, there is no testimony that the height of the counter negatively impacted her ability to enjoy and utilize the services and goods at that store.

-4-

enter." (Kramer Depo. at 85). Ms. Kramer stated that she did not return to Stein Mart anytime after the July 21, 2007 visit, and, in fact, never returned to the Facility after that date. (Kramer Depo. at 67, 71).

Ms. Kramer testified that she personally did not experience any barrier in a restroom anywhere at the Facility. (Kramer Depo. at 89, 95). She testified that she pulled her wheelchair up to a table at Quiznos and was able to eat and did not know whether the table was compliant or not, and that she had no knowledge whether there were non-compliant tables at that location. (Kramer Depo. at 87). She could not identify any locations where there were permanently designated interior spaces without proper signage; whether any part of the Facility lacked signage at an accessible check out aisle, or whether any interior doors exceeded the allowable maximum force of pounds to open.[3] (Kramer Depo. at 85-89). She did note that she believed a ramp in front of Quiznos was "inappropriate or not comfortable," (Kramer Depo. at 81), and that "there were no accessible routes from the street, sidewalk and parking areas" based on an experience in 2006 when she came to the plaza with her boyfriend when "[she] had to go behind cars into traffic to get to the sidewalk" after getting out of the car. (Kramer Depo. at 82-83). When

---

[3] Ms. Kramer did testify that she had a problem with the interior door at Stein Mart and that the interior door at the paper store was difficult. However, she also testified that she has problems with interior doors "everywhere – I ever go." She further stated that she did not have any personal knowledge as to whether those doors were compliant with the ADA requirements, but that she trusted her expert on that issue. (Kramer Depo. at 86). The expert, David Pedraza did not indicate in his Rule 34 inspection report that any doors at the Facility exceeded the 5 lb maximum force allowance. Although his preliminary report did list interior door maximum force as a potential violation, no particular door was identified as being over the force limit. In his deposition he testified that he remembered that it may have been the men's room door at the Chinese Wok that exceeded the limit, but could not say for sure. (Pedraza Depo. at 115-116). Ms. Kramer never entered or attempted to enter the men's room at that location, (Kramer Depo. at 87, 95), nor could she have any legitimate expectation of needing to enter the men's room in the future.

pressed on this issue, she would not swear that there were absolutely "no" accessible routes anywhere at the Facility, but clarified that she "witnessed places where there were no accessible routes." (Kramer Depo. At 83-84). This was further narrowed to an admission that "by Quizno's there was a place [without an accessible route],[4] but she had "no memory" of any other place at the Facility where there was not an accessible route to the sidewalk. (Kramer Depo. at 84).

She further testified that on different occasions visiting the Facility with her boyfriend (in 2006) she observed that "the parking lot had a lot of regular violations, the kinds of things I see everywhere, mismarked spots or spots not marked correctly, and certainly a lot of slopes to and from the parking lot to the sidewalks." (Kramer Depo. at 68). She did not indicate that these "regular violations" in any way prevented her from accessing the Facility or in any way impacted her personal use and enjoyment of the Facility. Ms. Kramer testified that between July 21, 2007 and the date of the deposition (October 26, 2008), she had not returned to the Solon Square Shopping Center. (Kramer Depo. at 71).

Along with its Motion for Summary Judgment, Midamco submitted records from the Greater Cleveland Regional Transit Authority, with an attached sworn and notarized certificate attesting to the authenticity of the records. These records show that Ms. Kramer did not use the RTA Paratransit service to go to the Facility anytime in July of 2007. (S.J. Motion, Ex. D). Midamco also submitted an affidavit from Robert Walick, the Director of Commercial Properties for Midamco and managing agent of the Solon Square Shopping Center. He attested, in a sworn and notarized statement, that Stein Mart was not open to the public at that Solon Square location

---

[4] Although she stated that there was no accessible route near Quiznos, Ms. Kramer testified that she ate at the Quiznos restaurant on more than one occasion without issue.

until October 27, 2007 (after Ms. Kramer's Complaint was filed), (Walick Aff. ¶ 7, 10), and that no sign for Stein Mart existed or was affixed to the building, identifying it as a tenant prior to October 3, 2007 (long after Ms. Kramer's alleged July 21, 2007 visit). (Walick Aff. ¶8, 9).

In Ms. Kramer's Opposition to the Motion for Summary Judgment, she submits an affidavit purporting to "correct" her deposition testimony, in an attempt to address the evidence submitted by Midamco. In that affidavit, she states that although she did visit the Solon Square Center on July 21, 2007, she rode there with her friend, David Lott, and did not take the RTA Paratransit service on that day. (Kramer Aff. ¶ 6). Further, she attests that she did not visit the Stein Mart on that date, but, contrary to her deposition testimony, she did visit the Office Max and she made a purchase. (Kramer Aff. ¶ 4-5). She attached a cash receipt from Office Max for that date, with no identifying name or credit card number; this receipt was not disclosed during discovery despite clear requests by Midamco for exactly this type of record. She maintains that she attempted to eat at the Chinese Restaurant on July 21, 2007, but that the entrance was blocked by steps and she could not enter. (Kramer Aff. ¶ 4). She states that she visited the Stein Mart on two separate occasions, both after July of 2007, once before and once after her deposition. (Kramer Aff. ¶ 5).

Ms. Kramer also submitted the affidavit of Dave Lott, her former boyfriend. Mr. Lott testified that he traveled with her to the Solon Square Shopping Center on several occasions, including a visit on July 21, 2007. (Lott Aff. ¶ 2). He does not indicate what stores Ms. Kramer accessed or attempted to access during any of those visits, and he gives no indication of any barriers she may have encountered during these visits. Finally, Ms. Kramer submitted an affidavit from David Pedraza, attesting to the accuracy of the findings, observations,

recommendations and cost estimates set forth in his expert report, based on his inspection of the Facility on July 1, 2008. (Pedraza Aff.).

At the same time this Motion for Summary Judgment was filed, Midamco also filed a Motion to Amend Answer to Add a Counterclaim Against Bonnie Kramer and Add Additional Parties, Disabled Patriots of America, Guy Shir, Todd Shulby, and David Pedraza.(ECF # 87). Plaintiff objected. (ECF #100). The Court granted the Motion allowing Midamco to bring counterclaims for Abuse of Process, Fraud, Civil Conspiracy to Commit Fraud, Spoilation and Racketeer Influenced and Corrupt Organizations Act against Bonnie Kramer and to add Disabled Patriots of America, Inc., back into the litigation as a counterclaim-defendant, along with Plaintiffs original attorneys, Todd Shulby and Guy Shir, and her expert, David Pedraza. . (ECF #108). The litigation currently includes the claims for ADA violations by Bonnie Kramer against Midamco, and claims for abuse of process, fraud, conspiracy, spoilation, and RICO by Midamco against Bonnie Kramer, Disabled Patriots of American, Guy Shir, Todd Shulby, and David Pedraza. The matter currently before the Court addresses only the viability of Bonnie Kramer's claim against Midamco.

## **STANDARD OF REVIEW**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions

> of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-

-9-

mover.  The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate.  *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## ANALYSIS

Midamco argues that Ms. Kramer had no standing to bring suit against it at the time she filed her Complaint.  To show Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an "injury in fact," (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). An "injury in fact" is a harm that is "concrete and particularized" and "actual or imminent." *Id.* at 560 (internal quotation marks and citations omitted). The plaintiff must show that he or she "sustained" or is immediately in danger of sustaining some direct injury as the result of the challenged . . . conduct and [that] the injury or

threat of injury [is] both real and immediate . . . ." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks and citations omitted). Further, "because injunctions regulate future conduct, a party seeking injunctive relief must allege . . . a real and immediate – as opposed to a merely conjectural or hypothetical – threat of future injury." *Wooden v. Bd of Regents University System of Georgia*, 247 F.3d 1262, 1284 (11th Cir. 2004).

Because the ADA provides for injunctive relief, Plaintiffs who encounter barriers at public accommodations have standing to bring claims only if they show a plausible intention or desire to return to the place but for the barriers to access. *See Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002); *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001). Intent to return to the place of injury "some day" is insufficient. *Lujan*, 504 U.S. at 564 ("[s]uch 'some day' intentions – without any description of concrete plans, or indeed even any specification of when the some day will be – do not support a finding of the 'actual or imminent' injury that our cases require.") Although, in the context of Title III of the ADA, plaintiffs need not engage in the "futile gesture" of visiting a building containing known barriers that the owner has no intention of remedying, *see* 42 U.S.C. § 12188(a)(1), they must at least prove actual knowledge of the barriers and show that they would visit the building in the imminent future but for those barriers. *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000).

Moreover, a plaintiff's claim that she "visited the facility as a 'tester' and intends to visit the Facility to 'verify its compliance or non-compliance with the ADA,' does little to support [her] allegation that [s]he is truly threatened by an immediate future injury." *Rosof*, at *8. "[An] ADA plaintiff cannot manufacture standing to sue in a federal court by simply claiming that [s]he intends to return to the Facility. Rather, in evaluating the likelihood of return, the courts examine four

-11-

factors: (1) proximity of the place of public accommodation to the plaintiff's residence; (2) the plaintiff's past patronage of defendant's business; (3) the definitiveness of the plaintiff's plans to return; and (4) the plaintiff's frequency of travel near the accommodation in question." *Wilson v. Kayo Oil,* No. 06-CV-1035 BEN (AJB), 2007 U.S. Dist. LEXIS 79832 at *5 (S.D. Cal. Oct. 25, 2007).

Pursuant to Fed. R. Civ. P. 56(a), Defendant submitted evidence showing that Ms. Kramer's version of the events occurring on July 21, 2009, the date she identified in her interrogatories as the date of the visit forming the basis for her Complaint, was either not accurate or not truthful. That evidence shows that, contrary to her testimony, she did not take the RTA Paratransit to the Facility on that date, or any date in July of 2007. Further, the evidence clearly shows that Stein Mart, the store she seemed most concerned by and complained most about in her deposition, was not even open for business until after her Complaint was filed with this Court. Ms. Kramer does not challenge the authenticity or accuracy of the evidence presented by Midamco in her Opposition to the Motion for Summary Judgment. Rather, she claims that her deposition testimony was in error, and that the visit leading to her Complaint occurred on a different, later date. She also contends in her affidavit that she did visit the Facility on July 21,2 007, and that she encountered barriers to access at other stores within the Facility.

The Court will not accept Ms. Kramer's affidavit as evidence to support her Opposition to the Motion for Summary Judgment. During her deposition, under oath, Ms. Kramer testified, absolutely and with no uncertainty or confusion as to the dates or locations, about the alleged barriers that she claimed formed the basis of her Complaint. She, like every other witness who is deposed, had the opportunity to review and correct any inaccuracies in her deposition testimony within 30

-12-

days after being notified that the transcript was available;[5] she made no changes or corrections after this period of review.[6] Failure to make any such changes or corrections constitutes a waiver of any and all errors in the deposition testimony. *See Brown v. ASD Computing Ctr.*, 519 F. Supp. 1096, 1098 (S.D. Ohio 1981). The Court need not, and will not accept a self-serving affidavit that contradicts her deposition testimony and is provided only after the Defendant filed its Motion for Summary Judgment incorporating evidence disproving her prior assertions. The law is clear that "a party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir. 1986); *see also Aerel, S.R.L. v. PCC Airfoils*, L.L.C., 448 F.3d 899, 907 (6th Cir. 2006). "[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Reid*, 790 F.2d at 460.     Once a moving party moves for summary judgment and properly supports that motion with evidence, an opposing party may not rely merely on allegations or denials in its own pleadings. Fed. R. Civ. P. 56(e)(2). Rather, that party must - by affidavits, depositions, or answers to interrogatories – present some specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e)(1) and (2). Midamco filed a motion for summary judgment properly supported by

---

[5] Pursuant to Federal Rule of Civil Procedure 30(e) a deponent may make "any changes in form or substance which the witness desires to make..." within 30 days after being notified by the officer that the transcript is available. The Court Reporter from Ms. Kramer's deposition notified the parties on December 11, 2008 that the deposition testimony was ready for review and signature.

[6] Ms. Kramer also had the benefit of counsel both during deposition and during the period of review.

evidence that Ms. Kramer has not refuted or contested. Disregarding Ms. Kramer's affidavit, there is no viable evidence[7] to show that Ms. Kramer suffered any discrimination on the basis of her disability at the Facility prior to the filing of her Complaint. Ms. Kramer submitted an affidavit from David Lott attesting that he drove her to the Facility on July 21, 2007. He did not, however, provide any evidence as to what establishments she visited at the Facility, nor did he provide any testimony or other evidence that she encountered any barriers to access at the Facility. Similarly, Ms. Kramer submitted an affidavit from her expert, David Pedraza. Mr. Pedraza, however, simply attested to the authenticity of his Rule 34 inspection report; he did not provide any evidence that Ms. Kramer had ever been to the Facility, or that she had personally encountered any barriers to access at the Facility. Finally, Ms. Kramer attached a receipt from Office Max dated July 21, 2007 to show that she had been at the Facility on that date. The receipt, however, is inadmissible because it was never produced during the course of discovery despite repeated requests for production of documents that would have included any receipts from the Facility. Further, Ms. Kramer testified at her deposition that she made no purchases at Office Max and encountered no barriers there, but only "popped her head in" and "did not spend much time there." (Kramer Depo. at 65, 68). The receipt provides no identifying information that would indicate that Ms. Kramer was the person who made a purchase on that date and certainly provides no evidence that Ms. Kramer encountered any barriers in the store.[8]

---

[7] There is no evidence aside from Ms. Kramer's deposition testimony, which she now admits was in error.

[8] In fact, if indeed the receipt was hers, it would indicate that she was able to effectuate a purchase, creating an inference in support of her deposition testimony that she did not encounter barriers to access of the goods and services at that store. (Kramer Depo. at 68).

-14-

Ms. Kramer's references to potential violations relating to parking and access routes that she noticed on visits to the Facility prior to July 21, 2007 do not provide any evidence that she personally suffered an injury that would give her standing to file suit.  She did not testify that she was unable to access any portion of the Facility prior to July 21, 2007 or that she personally encountered any barriers to access of the goods and services she sought to obtain.  Her testimony relating to her visit on July 21, 2007 was admittedly false[9] and cannot, therefore, be considered as a valid basis for the Complaint.  Further, she testified under oath that she made no other visits to the Facility prior to filing her Complaint.  The cases cited by Ms. Kramer in support of her Opposition all support the basic premise that a Plaintiff must have suffered an injury in fact in order to have standing to sue under Title III of the ADA.  Ms. Kramer has failed to establish any injury in fact prior to the date she filed her Complaint, and, therefore, she lacked standing to bring this action at that time.

Further, Ms. Kramer has provided no evidence that she would be likely to return to the Facility in any capacity other than as a "tester."  In order to have standing under Title III, a Plaintiff must have a plausible intention or desire to return to the place but for the barriers to access.  *See*

---

[9] Although the Court is not basing this opinion on Ms. Kramer's credibility, there is evidence that Ms. Kramer's sworn representations to the Defendant and to this Court have not been truthful throughout this litigation.  For example, Ms. Kramer's deposition testimony contradicts a previously filed delcaration filed on February 20, 2009 which states that she visits the Facility monthly to determine whether ADA compliance has been achieved.  At her deposition she testified that she had not returned to the Facility between July 20, 2007 and October 26, 2008 (the date of her deposition). (Kramer Depo. at 67, 105; ECF #15, Ex.1).  In addition, Ms. Kramer swore in her supplemental responses to Interrogatory number seven that she had attempted to locate and use accessible restrooms at the Facility but was unable to find any.  She admitted in her deposition, however, that this was untruthful, and that she had never attempted to find or use any restrooms at the Facility.  (ECF #34, Ex. 4; Kramer Depo. at 88, 94-95).  Her supplemental responses also identified Office Max and Quiznos as two stores where she encountered barriers to access; yet, in her deposition she stated that she did not encounter any barriers at Office Max or at Quiznos.  (ECF #34, Ex., 4; Kramer Depo. at 67, 68, 87).

*Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002); *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001). Ms. Kramer's only demonstrated reason for returning to the Facility would be to test for additional barriers. She has demonstrated no intent to use the Facility in her individual capacity once all barriers have been removed. In other words, if injunctive relief were granted there is no evidence that it would serve its purpose. Ms. Kramer has stated that she plans to return to the Facility to monitor compliance, not to access the goods and services provided there. Therefore, there is no evidence that Ms. Kramer would be likely to return once compliance is achieved because there would be no issues for her to monitor. She has provided no evidence that there is a real and immediate likelihood that she would return to the Facility outside of her role as a tester.[10] Intent to return to the place of injury "some day" is insufficient. *Lujan*, 504 U.S. at 564.

The Plaintiff has the burden of establishing standing, and that burden increases "with the manner and degree of evidence required at the successive stages of litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In ADA cases, it is also important to keep in mind that "proper analysis of standing focuses on whether the Plaintiff suffered an actual injury, not on whether a statute was violated." *Doe v. Nat'l Bd. Of Med. Examiners*, 199 F.3d 146, 153 (3d Cir. 1999). At the Summary Judgment stage, the generalized allegations of standing, which have allowed this case to continue to this point, are no longer adequate. Rather, the Plaintiff must provide actual evidence of specific facts demonstrating that each element of standing is satisfied. *Ctr. For Biological Diversity v. Lueckel*, 417 F.3d 532, 537 (6th Cir. 2005). Ms. Kramer has provided no

---

[10] In fact, she testified that there are many other shopping areas that are closer and more convenient, and that previously she visited the Facility because she was with her boyfriend, who worked in the area. She also testified that she is no longer with her boyfriend.

legitimate evidence to show that she suffered any actual injury prior to filing this lawsuit, nor has she provided any evidence of a specific intent to return to the Facility if the alleged violations are cured.  Therefore, she cannot establish two of the essential elements of Article III standing: (1) that she suffered an injury in fact, and (2) that the injury will likely be redressed by a favorable decision; she has no standing to pursue this action; and, her claims must be dismissed.. *See Id.* at 560-61.

## **CONCLUSION**

For the reasons set forth above, the Defendant's Motion for Summary Judgment (ECF #86) is hereby GRANTED.  Bonnie Kramer's claims are dismissed.  The counterclaims remain pending.  IT IS SO ORDERED.

    /s/Donald C. Nugent  
Judge Donald C. Nugent  
United States District Judge

Date:   August 20, 2009